IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

IN THE MATTER OF THE SEARCH OF
AN APPLE IPHONE (MODEL: A2484,
IMEI: 354798787397455) BELONGING TO
DA'SHAWN MARQUIS RICHARDS

Case No. ___2:23-cr-409___

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Adam M. Smith, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF") being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a search warrant under

Federal Rule of Criminal Procedure 41 for a search warrant authorizing the examination

of property, an electronic device, which is currently in law enforcement possession, and

the extraction from that property of electronically stored information described in

Attachment B.

   a.   An Apple iPhone cellular telephone, model A2484, with assigned

        International Mobile Equipment Identity (IMEI) Number

        354798787397455 that was recovered from Da'Shawn Marquis

        RICHARDS on March 30, 2023, at the time of his arrest.  The cellular

        phone is currently secured in evidence at the ATF Field Office.

2.     I, Adam M. Smith, am a Special Agent ('SA') with the Bureau of Alcohol,

Tobacco, Firearms and Explosives (ATF), and have been so employed since 2018.  I have

a Bachelor of Science degree in Criminal Justice received from Charleston Southern

University.  I am a graduate of the Federal Law Enforcement Training Center and the

ATF National Academy in Glynco, GA.  I received specialized training in various

firearm offenses, to include: the illegal possession of firearms, firearms trafficking, straw

purchasing of firearms, dealing in firearms without a license, and firearms classified

under the National Firearms Act of 1934, among others.  Prior to employment with ATF,

I was employed as a Deputy Sheriff with the Dorchester County Sheriff's Office (DCSO)

in South Carolina from 2006 to 2018.  During that time, I graduated from the South

Carolina Criminal Justice Academy and attended training courses in homicide

investigation, interviewing, firearms and narcotics trafficking, and violent crime.  I also

was certified as a Logical Operator and Physical Analyst with the Cellebrite phone

extraction software and conducted numerous cell phone extractions.  While at DCSO I

served in both the patrol and criminal investigations divisions and was promoted to the

rank of Detective Sergeant prior to being hired by ATF.  As such, I am an "investigative

or law enforcement officer" within the meaning of Title 18, United States Code, Section

2510(7), and empowered by federal law to investigate and make arrests for offenses

enumerated in Title 18, Title 21, and Title 26 of the United States Code.

     3.     This affidavit is made solely for the purpose of establishing probable

cause for the requested search warrant and does not set forth all the information pertinent

to the case.  The facts set out in this affidavit are derived from my background, training

and experience, my review of reports related to this case, my review of field notes related

to this case, my debriefings with the confidential informants, my conversations with other

involved personnel, my review of electronic surveillance, my own personal observations,

and other reliable sources of information relative to this investigation.  Except where

otherwise noted, the information set forth in this affidavit has been provided to me

directly or indirectly by law enforcement officers. I have not set forth every fact learned throughout this investigation. Facts not set forth herein are not being relied upon in reaching my conclusion that a search warrant should be issued.

4.     Based on my training and experience in addition to the facts as set forth in this affidavit, there is probable cause to believe that violations, including, among others of: 18 U.S.C § 922(g)(1) – Felon in possession of firearm and/or ammunition, 18 U.S.C. § 922(o) – Possession of Machinegun, and 21 U.S.C. § 841 – Possession with Intent to Distribute a Controlled Substance, have been committed by Da'Shawn Marquis RICHARDS (a/k/a "Street," a/k/a "Taz"). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

5.     I know that cellular telephones are often used by individuals to facilitate the commission of criminal acts, including the unlawful procurement of firearms by prohibited persons. Further, I am aware that incriminating evidence is often located within text messages, as well as photos and videos contained on cellular telephones. Additionally, call logs (for incoming, outgoing, and missed calls), stored contact lists, and location information have proven to be valuable evidence in criminal cases. Moreover, I am familiar with technology, such as Cellebrite mobile data transfer equipment, that allows law enforcement investigators to harvest data (such as incoming and outgoing text messages, photos, videos, call logs, and contacts) from cellular telephones. I also know that it is common for individuals involved in criminal activity to use cell phones subscribed in a name other than their own, and to use "pre-paid" cellular telephones for which no real subscriber information is available.

6.     I have good reason to believe and do believe that all the information provided to me and contained herein is credible and true.  I assert belief statements in this affidavit.  These belief statements are based on my training and experience involving complex investigations into criminal enterprises, to include violent street gangs, firearm traffickers and drug traffickers.

## JURISDICTION

7.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court a district court of the United States that has jurisdiction over the offense being investigated.  *See* 18 U.S.C. § 2711(3)(A)(i).

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrants to collect information from the following cellular telephones (hereinafter the "**TARGET PHONE**" or "**device**"):

a.     Apple iPhone cellular telephone, model A2484, with assigned International Mobile Equipment Identity (IMEI) Number 354798787397455 that was recovered from Da'Shawn Marquis RICHARDS on March 30, 2023, at the time of his arrest.  The cellular phone was recovered from the vehicle being driven by RICHARDS on that date.  The cellular phone is currently located in ATF Charleston Field Office's evidence vault.   The applied-for warrant would authorize the forensic examination of the device for the purpose of identifying electronically stored data particularly described in Attachment B.

## TRAINING AND EXPERTISE

9.      Based upon my training, experience and participation in other investigations involving firearms, "straw purchasing" of firearms, and firearms trafficking, I know that:

a.  Persons prohibited from acquiring and/or possessing firearms commonly use "Straw Purchasers" to purchase firearms on their behalf;

b.  Persons prohibited from acquiring and/or possessing firearms commonly use cellular phones to communicate with potential co-conspirators in the illegal acquisition, transfer and distribution of firearms (a/k/a "Straw Purchasers");

c.  Persons prohibited from acquiring and/or possessing firearms commonly use cellular phones to take photographs and/or videos of firearms to send to co-conspirators and other persons. Those photographs and/or videos are stored and maintained within cellular phones;

d.  Persons prohibited from acquiring and/or possessing firearms commonly use cellular phones to access online social media sites to communicate, disseminate, and/or post communications about firearms and/or firearm purchases. Those communications are stored within cellular phones;

e.  Persons prohibited from acquiring and/or possessing firearms commonly use cellular phones to complete online transactions for firearms, firearm parts/accessories, and firearm ammunition. Records of those transactions are stored within cellular phones;

f.  Persons prohibited from acquiring and/or possessing firearms commonly use cellular phones to complete financial transactions for firearms via the

internet or applications.-Records of those financial transactions are stored within cellular phones;

g. Cellular phones store location data which would identify places that prohibited persons went to acquire, transfer, and disseminate firearms, and;

h. I know that cellular telephones are often used by individuals to facilitate the commission of criminal acts, including the unlawful procurement of firearms by prohibited persons via person-to-person sale in addition to the unlawful purchase and sale of controlled substances.

i. Further, I am aware that incriminating evidence is often located within text messages, as well as photos and videos contained on cellular telephones. Additionally, call logs (for incoming, outgoing, and missed calls), stored contact lists, and location information have proven to be valuable evidence in criminal cases.

j. Moreover, I am familiar with technology, such as Cellebrite mobile data transfer equipment, that allows law enforcement investigators to harvest data (such as incoming and outgoing text messages, photos, videos, call logs, and contacts) from cellular telephones. I also know that it is common for individuals involved in criminal activity to use cell phones subscribed in a name other than their own, and to use "pre-paid" cellphones for which no real subscriber information is available.

## PROBABLE CAUSE

## Charleston County Sheriff's Office, Case # 21012040

10.     On September 19, 2021, the Charleston County Sheriff's Office (CCSO) responded to the area of Savannah Highway and Davidson Road, Charleston, South Carolina in reference to a shooting.  Upon arriving on scene, deputies located a victim, Timothy Thompson, who was suffering from gunshot wounds.  The victim was transported by EMS where he later was pronounced deceased.  Investigators with the Charleston County Sheriff's Office subsequently developed Da'Shawn Marquis RICHARDS as a suspect in this homicide.

11.     On November 5, 2021, Detective McCauley with CCSO obtained arrest warrants for RICHARDS for the charges of Murder and Attempted Murder.

12.     On November 8, 2021, members of the United States Marshals Task Force, the Charleston County Sheriff's Office, and the North Charleston Police Department identified RICHARDS in possession of and driving a black 2016 Kia Optima sedan with South Carolina License Plate 7992PH.[1]  Surveillance was conducted at 5446 Marie Road in North Charleston, SC, a location where RICHARDS was known to reside.  RICHARDS was observed as the driver and sole occupant of the vehicle and a traffic stop was conducted at 1846 Remount Road in North Charleston, SC.  As a result of the traffic stop, RICHARDS was taken into custody pursuant to the active arrest warrants with the Charleston County Sheriff's Office.   The vehicle driven by RICHARDS was seized as evidence by the

---

[1] The black 2016 Kia Optima sedan bearing SC license plate 7992PH that RICHARDS was found in possession of on November 8, 2021, was registered to Santonio Geroard Hamilton Jr.  The owner, Hamilton, was found deceased in the City of Hanahan on September 27, 2021.  Hamilton's death was determined to be a homicide, HPD Case # 2021-002010.

Charleston County Sheriff's Office and towed to their Forensic Services Unit pending a search warrant being obtained and executed.

13.    On November 8, 2021, the Charleston County Sheriff's Office was issued a search warrant for the vehicle being driven by RICHARDS.  During the execution of the search warrant, a pistol with an extended magazine and ammunition, along with an additional pistol magazine and ammunition, were located within the glove compartment of the vehicle.  Items seized by the Charleston County Sheriff's Office as evidence for their investigation, included the following:

a.   Glock, model 45, 9mm caliber pistol with Serial Number BNTV847;[2]

b.   Tan 9mm extended magazine for the Glock model 45 pistol which contained approximately twenty-seven (27) rounds of 9mm caliber ammunition; and

c.   Black 5.7x28mm caliber magazine which contained approximately fifteen (15) rounds of 5.7x28mm caliber ammunition.

---

[2] The Glock, model 45, 9mm caliber pistol with Serial Number BNTV847 that was located in the glove compartment of the vehicle driven by RICHARDS was test fired and submitted to the ATF National Integrated Ballistics Information Network (NIBIN) for comparison.  The results of the submission yielded a presumptive lead to spent shell casings that were submitted by the North Charleston Police Department, Case # 2021025391.  This NIBIN lead linked the firearm recovered from RICHARDS to a homicide that occurred on September 11, 2021, at 4241 Rivers Ave North Charleston, South Carolina.

 

*(Glock, model 45, 9mm caliber pistol with S/N: BNTV847 and tan extended magazine)*

14.     Also located within the vehicle was a receipt from GameStop which was dated November 6, 2021.  On the receipt, the name of RICHARDS was listed as being the purchaser of the items. Additionally in the rear seat of the vehicle, a black Nike Air Max satchel was located.

15.     At the time of arrest, RICHARDS had an Apple iPhone cellular phone on his person that was seized by CCSO as evidence in their case.  The Charleston County Sheriff's Office applied for and obtained a search warrant for the phone possessed by RICHARDS in order to conduct a forensic extraction of the data contained therein.  A copy of the forensic extraction of the cellular phone belonging to RICHARDS was obtained by FBI Task Force Officer (TFO) Mapp of the Charleston Police Department and was reviewed.

16.     Within the cellular phone extraction for RICHARDS, TFO Mapp located a video with a date stamp of November 6, 2021, two days prior to his arrest.  Within the

video, at least three firearms (pistols) can be observed in the center console.  Of those firearms, at least two appear to have machine gun conversion devices (a/k/a "Glock Switches")[3] installed on them.  There is one Glock style pistol which does not appear to have a machine gun conversion device attached to it; however, a tan extended magazine can be observed inserted into the firearm magazine well.  Also observed in the video are several clear plastic bags which contain an off-white crystal-like substance, suspected to be methamphetamine.  This affiant noted that the Glock pistol with the tan extended magazine was similar in characteristics to the one recovered from the vehicle on November 8, 2021, when RICHARDS was driving and subsequently arrested.

  

17.    TFO Mapp also located a photograph on the cellular phone of RICHARDS, which also had a date stamp of November 6, 2021 (November 6th

---

[3] This affiant knows that machine gun conversion devices (a/k/a "Glock Switches") are regulated within the National Firearms Act of 1934.  This affiant also knows that machine gun conversion devices are considered both firearms and machineguns and are therefore illegal to acquire, possess, and transport.

photograph), two days prior to his arrest.  Captured in this photograph is a black Nike Air

Max satchel with two firearms: one a black Glock style pistol with an attached machine

gun conversion device and drum magazine, and the other a black pistol with a tan

extended magazine protruding. This affiant noted that the black Nike Air Max satchel

appeared similar to the one located in the vehicle being driven by RICHARDS on

November 8, 2021, when he was arrested. Additionally, law enforcement located a

photograph with a date stamp of November 5, 2021, of a person who appears to be

RICHARDS wearing a similar shirt and pants to the November 6th photograph.  In this

picture, the individual appears to have a Glock style pistol in his waistband with an

extended magazine protruding.

 

18.    This affiant conducted a vehicle title search for the 2016 Kia Optima

sedan bearing SC License Plate 7992PH and VIN: 5XXGT4L31GG107764 through the

South Carolina Division of Motor Vehicles (SCDMV).  This affiant learned that the

vehicle was purchased by Da'Shawn Marquis RICHARDS with an address of 5446

Marie Street North Charleston, SC 29406 on February 3, 2021.  The title history then

shows that on May 16, 2021, the vehicle was then purchased by Santonio Geroard Hamilton Jr. with an address of 5415 Califf Road, Apt B, North Charleston, SC, for the sale price of $1.00.

### North Charleston Police Department, Case # 2023004318

19.     On February 16, 2023, Officer Magrane of the North Charleston Police Department was patrolling the area of Parana Street in North Charleston, South Carolina. Officer Magrane observed a grey 2015 Chrysler 200 sedan with South Carolina License Plate 3909QZ backed into the side parking lot of the SS Mart, which is located at 1639 Remount Road, North Charleston, South Carolina.  The vehicle had dark tinted windows including the front windshield.  Officers observed what appeared to be a hand-to-hand controlled substance transaction take place with an occupant in the front driver's seat.

20.     Officers approached the vehicle and made contact with Denali Deonco White, who had exited from the front driver's seat.  Upon making contact with White, Officers smelled the strong odor of marijuana emitting from his person.

21.     Officers conducted a probable cause search of the vehicle due to the odor of marijuana in conjunction with the observation of a hand-to-hand controlled substance transaction.  The probable cause search of the vehicle yielded three (3) firearms containing ammunition which were located in the glove compartment of the vehicle.  The firearms and ammunition located within the vehicle are identified as follows:

      a.  FN, model Five Seven, 5.7x28mm caliber pistol with Serial Number 386383073 which contained approximately eighteen (18) rounds of 5.7x28mm caliber ammunition;

b. Glock, model 19, 9mm caliber pistol with Serial Number BUPW183 which contained approximately sixteen (16) rounds of 9mm caliber ammunition; and

c. Springfield, model XD-9, 9mm caliber pistol with Serial Number BA732548 which contained approximately sixteen (16) rounds of 9mm caliber ammunition.

22.     White told officers that he did not know who the vehicle belonged to and denied knowledge of whom the firearms and ammunition belonged to.[4]  White was released from the scene and the firearms and ammunition were seized as evidence by the North Charleston Police Department.  The vehicle was towed by Jim's Towing due to the owner not being present.

23.     The grey Chrysler 200 sedan with South Carolina License Plate 3909QZ was queried through the South Carolina Division of Motor Vehicles (SCDMV) for registration information.  The records with SCDMV showed that the vehicle currently was registered to Da'Shawn Marquis RICHARDS with an address of 5446 Marie Street North Charleston, South Carolina.  The registered information with the SCDMV for the vehicle in question showed that it was current.

24.     A query of SCDMV records for Da'Shawn Marquis RICHARDS was conducted.  Records located identified RICHARDS as possessing a South Carolina Driver's License (SCDL), number 104152346.  The address provided on the SCDL for RICHARDS also listed the address of 5446 Marie Street North Charleston, South

---

[4] It should be noted that Denali Deonco White is a known associate of Da'Shawn RICHARDS and has documented encounters with law enforcement where RICHARDS also was present.

Carolina, which is the same address as the registered address of the aforementioned vehicle.

25.    On or about February 16, 2023, FBI Task Force Officer (TFO) Rivera of the North Charleston Police Department viewed an Instagram social media post from an account with the username of "_tazfargo2x." TFO Rivera has knowledge that this account is owned and utilized by RICHARDS.[5]  TFO Rivera also knows RICHARDS to use the nicknames of "Taz" and "Street."  Within the Instagram post, TFO Rivera observed a video, which had the caption "Police Done Tow My Shit & take my guns all typa shit."  The video appears to be taken at Jim's Towing, the company that towed and stored RICHARDS' vehicle.  The video shows the interior and exterior of the vehicle and the video appears to be taken in the evening.



---

[5] TFO Rivera has personally viewed photographs and videos on the Instagram account of "_tazfargo2x" and has identified them to be of Da'Shawn RICHARDS.

*(Screenshot from video posted to the Instagram account of "_tazfargo2x")*

26.    On March 10, 2023, FBI TFO Rivera contacted Jim's Towing, located at 914 College Park Road Summerville, South Carolina 29486.  TFO Rivera was provided with an impound invoice for the Chrysler sedan, which was dated February 17, 2023, and identifies RICHARDS as taking possession of the vehicle.  TFO Rivera also obtained a copy of the SCDL for RICHARDS, which RICHARDS provided to Jim's Towing at the time the vehicle was released to identify himself as the party accepting possession of it. The paperwork obtained by TFO Rivera from Jim's Towing corroborates the statements made by RICHARDS in his posted Instagram video, claiming that his car was towed and that the police took his guns.

## North Charleston Police Department, Case # 2023007591

27.    On March 22, 2023, at approximately 6:20 P.M., Detective Rivera and Detective DeSheers of the North Charleston Police Department were patrolling the Charleston Farms Community due to recent unsolved homicides and intelligence of narcotics sales.  While on Garrett Ave approaching Remount Road, Detectives observed a silver Ford Explorer bearing Georgia license plate RAP9832 approaching the stop sign on Remount Road.

28.    Detectives observed the vehicle speeding, and saw the driver fail to properly signal approaching a stop sign, and therefore a traffic stop was conducted near the intersection of Remount Road and North Rhett Ave in North Charleston, SC.  Detectives approached the vehicle and identified the driver and single occupant of the vehicle as

RICHARDS. Detective Rivera immediately detected the fresh odor of marijuana emanating from inside the vehicle.

29.    Detectives informed RICHARDS of the traffic violations and reason for the traffic stop. RICHARDS denied speeding but later admitted to not properly signaling. Upon approaching the open driver side window, Detective Rivera observed in plain view what appeared to be a smoked marijuana cigarette. Detective Rivera asked RICHARDS about the odor of marijuana and the smoked marijuana cigarette. RICHARDS told detectives that he had been smoking marijuana earlier that day.

30.    Detective Rivera asked RICHARDS about any weapons being present inside the vehicle for officer safety concerns. RICHARDS informed Detective Rivera that there was a gun in the glove compartment. Detective Rivera then asked RICHARDS to exit the vehicle so that a probable cause search could be conducted due to the plain view marijuana, RICHARDS' admission of smoking marijuana, and RICHARDS' statement of a firearm being present inside the vehicle.

31.    RICHARDS was escorted to the front of Detective Rivera's vehicle while Detective DeSheers began the probable cause search of the vehicle. Detective Rivera asked RICHARDS about the firearm he stated was in the vehicle. RICHARDS described the firearm as a Glock 45 handgun. RICHARDS stated that he needed the firearm for his protection due to previously being shot on two separate occasions. RICHARDS also told Detective Rivera that he had purchased the firearm off the website of Armslist.com and that it was "registered." RICHARDS also stated that he was driving a rental car due to his vehicle being towed. Detective Rivera also observed RICHARDS wearing an ankle

monitor and was informed that he was currently on bond for unrelated charges. RICHARDS also told Detective Rivera that he was living in Goose Creek, SC.

32.     Within the vehicle, Detective DeSheers recovered a loaded black and white designer Glock, model 45, 9mm caliber pistol with serial number BXLT293. The firearm was loaded with approximately eighteen (18) rounds of 9mm caliber ammunition in an extended magazine. Also recovered from the glove compartment was and additional pistol magazine which had approximately twelve (12) rounds of 9mm caliber ammunition. Detective DeSheers also located and recovered the smoked marijuana cigarette from the ash tray cup in the center console.

33.     After the recovery of the firearm and ammunition, Detectives confirmed that RICHARDS was federally prohibited from possessing firearms and/or ammunition due to a prior felony conviction within the State of South Carolina. Detectives Seized the firearm, firearm magazines, ammunition and suspected marijuana which were all secured in evidence at the North Charleston Police Department. RICHARDS was released from the traffic stop with a warning for the traffic violations. The suspected marijuana was field tested and was presumptive for marijuana.

34.     This affiant received and reviewed an ATF National Tracing Center, Firearms Trace Summary Report, Trace # T20230149434, regarding the Glock, model 45, 9mm caliber pistol with serial number BXLT293 which was recovered in possession of RICHARDS on March 22, 2023. From review of the report, this affiant learned that the firearm was purchased on or about March 18, 2023, by Michayla Takia Pittman. This affiant found that the firearm was purchased from the Federal Firearms Licensee (FFL) of

Palmetto State Armory in Charleston, SC approximately four (4) days prior to the recovery in possession of RICHARDS.

35.     This affiant obtained and reviewed purchase records from the FFL of Palmetto State Armory regarding the purchase of the Glock, model 45, 9mm caliber pistol with serial number BXLT293 that was found to have been purchased by Michayla Pittman approximately four (4) days prior to the traffic stop of RICHARDS by the NCPD.  The receipt showed that Pittman purchased a twenty-five (25) round box of Hornady 9mm caliber 115gr FTX Critical Defense ammunition in addition to the firearm on March 18, 2023.  The receipt also documents that Pittman paid for the transaction in cash.  This affiant noted that approximately eighteen (18) rounds of Hornady 9mm caliber ammunition was located in an extended magazine with the firearm during the NCPD traffic stop with RICHARDS on March 22, 2023.  During the probable cause search of the vehicle driven by RICHARDS on that date, neither the remaining rounds of Hornady ammunition nor the ammunition packaging were located along with the firearm.

36.     The firearm and ammunition that was seized by North Charleston Police Department in possession of RICHARDS were examined by ATF Interstate Nexus Expert SA Brittany Hill.  Upon review, SA Hill found that neither the firearm nor the ammunition were manufactured within the State of South Carolina, and therefore had traveled in interstate commerce and/or foreign commerce.

## **BACKGROUND OF RICHARDS**

37.     RICHARDS is federally prohibited from possessing firearms and/or ammunition pursuant to the Gun Control Act of 1968.   This affiant received and reviewed certified conviction records from the General Sessions Court of Berkeley

County, South Carolina, for RICHARDS.  The records in question, Indictment #

2018GS-08-00847, document that RICHARDS was convicted for a felony crime

regarding the charge of Burglary 2nd degree (non-violent) on or about June 26, 2018.  The

court records showed that RICHARDS was sentenced to a term of imprisonment of six

years.

38.    This affiant conducted a pardon check for RICHARDS through the South

Carolina Department of Probation, Parole and Pardon Services (SCPPP).  This affiant

learned that RICHARDS had not received a pardon for any conviction as of this date

through the State of South Carolina.

39.    This affiant also received and reviewed a South Carolina Department of

Probation, Parole and Pardon (SCPPP) Services Project Ceasefire form which was signed

by RICHARDS and dated June 26, 2018.  The form outlines Title 18 U.S.C. § 922(g),

Title 18 U.S.C. § 924(a), and Title 18 U.S.C. § 924(e).  Within the form, RICHARDS

signed and dated acknowledging his prohibition to possessing firearms and/or

ammunition pursuant to Title 18, U.S.C § 922(g) based on his conviction for a crime

punishable by imprisonment for a term exceeding one year.

### RICHARDS' INSTAGRAM ACCOUNT

40.    TFO Rivera informed this affiant of an Instagram account which is known

to be owned and operated by RICHARDS.  TFO Rivera provided this affiant with the

Instagram username of "_tazfargo2x" (hereinafter RICHARDS' Instagram account). TFO

Rivera has personal knowledge of RICHARDS and is aware of him also going by the

street names of "Taz" and "Street."  TFO Rivera personally has viewed the Instagram

account with the username of "_tazfargo2x" and has identified RICHARDS in the photographs and/or videos which have been posted.

41.     This affiant has reviewed RICHARDS' Instagram account. RICHARDS has posted both to his account page and in his Instagram stories photographs and/or videos of him possessing firearms and US Currency.  All of these posts with firearms were made after June 26, 2018, meaning that RICHARDS was prohibited from possessing firearms and/or ammunition at the time of these posts. This affiant took a sampling of posts by RICHARDS to include and document with this affidavit; these do not include all of the posts and/or stories made by RICHARDS.



42.     On or about March 16, 2023, RICHARDS posted an Instagram story with a photograph of an individual holding what appears to be two AR style pistols. Additionally, three black in color pistols can be observed on the ground in front of him. The photograph has the caption "Name a gun I ain't shot, name a black I ain't hit (Name it, name it)."



43.    On or about February 16, 2023, RICHARDS posted an Instagram story with a video showing an unseen individual walking through a tow lot up to a vehicle. The vehicle in this video is the same make and model of the vehicle belonging to RICHARDS that was seized and towed by the North Charleston Police Department. An individual presumed to be RICHARDS videos the inside of this vehicle with on overlaid caption reading "Police Done Tow My Shit & take my guns all typa shit."



44.    On or about May 5, 2022, RICHARDS posted a series of photographs to his Instagram account. Within this series of photographs, RICHARDS can be observed with what appears to be a black pistol next to his feet.  The post also contains the caption "Aye They Say I Couldn't Be Around No Gang Members, They Got Me Fucced Up I Go Everywhere With My Killers."



45.    On or about November 5, 2021, RICHARDS posts a series of photographs to his Instagram account showing an individual that appears to show RICHARDS with a black pistol equipped with an extended magazine visible in the waistband of his pants.[6]



---

[6] A similar photograph also was recovered from the known cellphone of RICHARDS. *See supra* paragraph 17.

46.     On or about September 17, 2021, RICHARDS posted a photograph to his Instagram account posing with what appears to be a large sum of US Currency, as well as a black pistol lying next to him on the kitchen counter.



47.     On or about March 29, 2023, the affiant applied for an issued a federal search warrant for the Instagram account of "_tazfargo2x" which is known to be utilized by RICHARDS.  The search warrant was signed by United States Magistrate Judge Cherry.  The affiant served the search warrant on Instagram for requested records associated with the account of "_tazfargo2x" on March 31, 2023.

48.     On April 25, 2023, the affiant received the records requested pursuant to the search warrant from Instagram for the account of "_tazfargo2x" which is known to be utilized by RICHARDS.  The records received for the account were for the date range of September 1, 2021 to March 29, 2023.

24

49.    The affiant reviewed the records received from Instagram and found that the account was active and utilized during the specified time frame.  The affiant personally reviewed message correspondences between RICHARDS and other users.  The affiant also reviewed photographs and videos which were posted to the account in addition to being transmitted between the account and other users.  Through professional training and experience, the affiant knows that Instagram accounts are primarily accessed and utilized through an application which is downloaded and installed on a cellular phone.  The affiant also knows that the cellular phones store data associated with the Instagram application to include pictures, videos and chat correspondences.

50.    The affiant personally viewed photographs and videos associated with the Instagram account of "_tazfargo2x" which depicted firearms, machinegun conversion devices (a/k/a "Glock Switches"), and controlled substances.  The affiant reviewed messages between the account of "_tazfargo2x" and other users in which there were communications regarding the acquisition and sale of firearms and machinegun conversion devices.  The affiant also observed multiple photographs and videos of RICHARDS in possession of firearms and machinegun conversion devices.

51.    The affiant also reviewed messages between the account of "_tazfargo2x" and other users which depict transactions involving the acquisition and sale of controlled substances (marijuana).  The affiant observed that within those messages, there were communications discussing prices and quantities for the controlled substances in addition to photographs and videos of controlled substances.

## ARREST OF RICHARDS

52.    On March 24, 2023, the affiant applied for and was issued a criminal complaint and arrest warrant for RICHARDS for the charge of 18 U.S.C § 922(g)(1) – Felon in possession of firearm and/or ammunition, which was signed by United States Magistrate Judge Cherry.  Additionally, on March 29, 2023, the affiant applied for and was issued a federal search warrant for the residence of 213 Water Oak Drive Goose Creek South Carolina which is where RICHARDS was known to reside.

53.    On March 30, 2023, the affiant along with additional personnel from the ATF and the Federal Bureau of Investigation (FBI) observed RICHARDS leaving the residence in a silver Ford Explorer with Georgia license plate RAP9832.  RICHARDS was subsequently stopped by the Goose Creek Police Department and taken into custody. At the time of his arrest, RICHARDS was in possession of an Apple iPhone cellular telephone, model A2484, with assigned International Mobile Equipment Identity (IMEI) Number 354798787397455, identified as the TARGET PHONE.  The cellular phone belonging to RICHARDS was seized as evidence and was secured at the ATF Field Office in evidence for the investigation.

54.    On March 30, 2023, the federal search warrant was executed on 213 Water Oak Drive Goose Creek South Carolina subsequent to the arrest of RICHARDS.  During the search of the residence, indicia of occupancy was located with identifying information for RICHARDS.  Among the evidence located and seized, were the following: a firearm, multiple calibers of firearm ammunition and various firearm parts and/or accessories.  The evidence seized during the search warrant was secured within the evidence vault at the ATF Field Office for this investigation.

## TECHNICAL TERMS

55.    Based on my training and experience, I use the following technical terms to

convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular
telephone) is a handheld wireless device used for voice and data communication
through radio signals.  These telephones send signals through networks of
transmitter/receivers, enabling communication with other wireless telephones or
traditional "land line" telephones.  A wireless telephone usually contains a "call
log," which records the telephone number, date, and time of calls made to and
from the phone.  In addition to enabling voice communications, wireless
telephones offer a broad range of capabilities.  These capabilities include: storing
names and phone numbers in electronic "address books;" sending, receiving, and
storing text messages and e-mail; taking, sending, receiving, and storing still
photographs and moving video; storing and playing back audio files; storing
dates, appointments, and other information on personal calendars; and accessing
and downloading information from the Internet.  Wireless telephones may also
include global positioning system ("GPS") technology for determining the
location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital
picture files, rather than by using photographic film.  Digital cameras use a
variety of fixed and removable storage media to store their recorded images.
Images can usually be retrieved by connecting the camera to a computer or by
connecting the removable storage medium to a separate reader.  Removable
storage media include various types of flash memory cards or miniature hard
drives.  Most digital cameras also include a screen for viewing the stored images.
This storage media can contain any digital data, including data unrelated to
photographs or videos.

c.  GPS:  A GPS navigation device uses the Global Positioning System to display its
current location.  It often contains records of locations where it has been.  Some
GPS navigation devices can give a user driving or walking directions to another
location.  These devices can contain records of the addresses or locations involved
in such navigation.  The Global Positioning System (generally abbreviated
"GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite
contains an extremely accurate clock.  Each satellite repeatedly transmits by radio
a mathematical representation of the current time, combined with a special
sequence of numbers.  These signals are sent by radio, using specifications that
are publicly available.  A GPS antenna on Earth can receive those signals.  When
a GPS antenna receives signals from at least four satellites, a computer connected
to that antenna can mathematically calculate the antenna's latitude, longitude, and
sometimes altitude with a high level of precision.

d.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

56.  Based on my training, experience, and research, I know these devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media

player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

57.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

58.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the device because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual

29

information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

59.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

60.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

61.    Based upon the evidence gathered during this investigation I believe there is probable cause to support that evidence along with fruits and instrumentalities of violations 18 U.S.C § 922(g)(1) – Felon in possession of firearm and/or ammunition, 18 U.S.C. § 922(o) – Possession of Machinegun, and 21 U.S.C. § 841 – Possession with Intent to Distribute a Controlled Substance will be located within the TARGET PHONE as described in Attachment A. Based on the forgoing, I request that the Court issue the proposed search warrant.

62.  This affidavit has been reviewed by AUSA Allessandra Stewart.

Respectfully submitted,

ADAM SMITH  Digitally signed by ADAM SMITH
Date: 2023.05.03 12:32:08 -04'00'

Adam M. Smith, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

SWORN TO ME VIA TELEPHONE OR
OTHER RELIABLE ELECTRONIC MEANS
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE.

This __3__ day of __May_____, 2023
Charleston, South Carolina

The Honorable Molly H. Cherry
UNITED STATES MAGISTRATE JUDGE